IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————

THE STATE OF ARIZONA,
*Appellant,*

*v.*

AUSTIN GARRETT HANSEN,
*Appellee.*

No. 2 CA-CR 2014-0103
Filed March 10, 2015

———————————

Appeal from the Superior Court in Pinal County
No. S1100CR201300597
The Honorable Gilberto V. Figueroa, Judge

**AFFIRMED**

———————————

COUNSEL

M. Lando Voyles, Pinal County Attorney
By Renee J. Waters, Deputy County Attorney, Florence
*Counsel for Appellant*

Shell & Nermyr, PLLC, Chandler
By Chad Shell
*Counsel for Appellee*

## OPINION

Chief Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Miller concurred.

E C K E R S T R O M, Chief Judge:

**¶1**     The state challenges the trial court's order granting a mistrial after the jury returned contradictory verdict forms in which it found appellee Austin Hansen guilty of aggravated assault with a deadly weapon but not guilty of its lesser included offense of simple assault.[1]  We conclude the state lacks a right to appeal the mistrial order.  We nonetheless exercise our special action jurisdiction to resolve a legal question of statewide importance regarding the effect of an ambiguous verdict.  *See* A.R.S. § 12-120.21(A)(4).

### Factual and Procedural Background

**¶2**     Hansen was charged with a single count of aggravated assault with a deadly weapon or dangerous instrument pursuant to A.R.S. § 13-1204(A)(2) as a result of a stabbing at a music festival.  For sentencing enhancement purposes, the state alleged the offense was of a dangerous nature due to the use of a knife.  *See* A.R.S. §§ 13-105(13), 13-704.  The court bifurcated the trial to separately address the questions of guilt and dangerousness.

**¶3**     During the guilt phase, the jury received instructions and verdict forms for aggravated assault and its lesser included

---

[1]"Logically, . . . if one has not committed the lesser offense, one cannot have committed the greater," *Peak v. Acuna*, 203 Ariz. 83, ¶ 5, 50 P.3d 833, 834 (2003), and "the extra element distinguishing the lesser included offense of assault from the greater offense, aggravated assault, is the use of a deadly weapon." *State v. Torres*, 156 Ariz. 150, 152, 750 P.2d 908, 910 (App. 1988).  We refer to the contradictory verdict forms here as an ambiguous verdict, following *People v. Carbajal*, 155 Cal. Rptr. 3d 335, 342 (2013).

offense of simple assault. When the jury returned the forms in open court, the judge initially overlooked that the forms stated the jury had found Hansen both guilty of aggravated assault and not guilty of simple assault. Only the verdict of guilt was announced in court. The court asked the jurors whether this was their verdict, they replied in the affirmative, and no dissent was registered when the jury was polled at Hansen's request.

**¶4** After the jury was instructed on the question of dangerousness and returned an affirmative finding, the trial court discovered its previous oversight.[2] The judge explained that he had seen only the guilty verdict form and had handed that form alone to the clerk to be announced. When the court asked the foreperson of the jury whether the jurors had believed they were required to render a verdict on simple assault, the foreperson responded, "I think it was more my confusion on what I was doing with the two sheets." The court interrupted this response to maintain the secrecy of the jury's deliberative process. Hansen's counsel stated his belief that the only option was a mistrial, and the court agreed over the state's objection. The state then filed its notice of appeal from the mistrial order.

**Jurisdiction**

**¶5** This court's appellate jurisdiction is provided and limited by statute. *State v. Avila*, 147 Ariz. 330, 333, 710 P.2d 440, 443 (1985); *see* Ariz. Const. art. VI, § 1; A.R.S. § 12-120.21(A)(1). Appeals by the state are historically disfavored, *State v. Bejarano*, 219 Ariz. 518, ¶ 9, 200 P.3d 1015, 1019 (App. 2008), and A.R.S. § 13-4032 sets forth the exclusive grounds on which the state may appeal. *State v. Fendler*, 127 Ariz. 458, 461, 622 P.2d 17, 20 (App. 1980). Because this statute provides a right in derogation of the common law, we

[2]The record indicates that two bench conferences were held on this matter, but, because those discussions were not transcribed, we do not know what arguments or requests the parties may have made during that time. We disapprove the practice of not recording bench conferences. *State v. Dann*, 220 Ariz. 351, ¶ 104, 207 P.3d 604, 623 (2009).

construe its terms strictly and presume that the state has no right of appeal "in the absence of express legislative authority" to the contrary. *State v. Dawson*, 164 Ariz. 278, 280, 792 P.2d 741, 743 (1990); *see State v. Moore*, 48 Ariz. 16, 18, 58 P.2d 752, 752 (1936) (noting "right of appeal in criminal cases is not known to the common law").

¶6 The state identifies § 13-4032(2) as the basis of our appellate jurisdiction. That provision allows the state to appeal "[a]n order granting a new trial." *Id.* An order declaring a *mistrial*, however, is not equivalent to an order granting a *new trial*.

¶7 Although a new trial typically follows the declaration of a mistrial, *see Gray v. Gardiner*, 92 Ariz. 208, 211, 375 P.2d 562, 564 (1962), there are situations that plainly illustrate both the distinct nature of these orders and the fact a new trial is not an inevitable consequence of a mistrial. For purposes of changing judges, for instance, we distinguish an order granting a new trial from one granting a mistrial. *King v. Superior Court*, 108 Ariz. 492, 493, 502 P.2d 529, 530 (1972); *see State v. Neil*, 102 Ariz. 110, 117, 425 P.2d 842, 849 (1967) (Bernstein, C.J., dissenting) (noting "[t]here is a critical distinction between a new trial and a mistrial," because latter entails no judgment or sentence having been rendered by court). Similarly, if numerous trials have failed to result in a verdict, then a criminal defendant's due process rights might prohibit a successive prosecution following the declaration of a mistrial. *See State v. Huffman*, 222 Ariz. 416, ¶¶ 12-15, 215 P.3d 390, 394-96 (App. 2009). A new-trial order likewise might never result from a "mistrial" that is imposed as a sanction for a disclosure violation under Rule 15.7(a)(3), Ariz. R. Crim. P.

¶8 In the criminal context more broadly, the declaration of a mistrial does not automatically result in a new trial when the mistrial is occasioned by intentional prosecutorial misconduct. *See State v. Jorgenson*, 198 Ariz. 390, ¶ 4, 10 P.3d 1177, 1178 (2000). Furthermore, in the civil context the declaration of a mistrial is not equivalent to a new trial and cannot be appealed under the analogous provision in our civil statute, A.R.S. § 12-2101(A)(5)(a), which allows an appeal from an order "[g]ranting or refusing a new trial, or granting a motion in arrest of judgment." *See Davis v. Davis*,

195 Ariz. 158, ¶ 12, 985 P.2d 643, 646-47 (App. 1999). Given these substantive differences between the terms of art, as well the applicable rule of strict construction, *Dawson*, 164 Ariz. at 280, 792 P.2d at 743, we therefore hold that the state does not have a right to appeal an order granting a mistrial under § 13-4032(2).

**¶9** With our appellate jurisdiction lacking, we nevertheless find it appropriate to exercise our special action jurisdiction pursuant to § 12-120.21(A)(4) and address the merits of the state's arguments presented in its brief. We exercise our discretion in this manner because this case presents an important legal question concerning the effect of an ambiguous verdict, and the state is without "an equally plain, speedy, and adequate remedy by appeal." Ariz. R. Spec. Actions 1(a); *see State v. Bayardi*, 230 Ariz. 195, ¶ 7, 281 P.3d 1063, 1065-66 (App. 2012).

**Mistrial**

**¶10** Both parties agree that a final verdict was returned by the jury that must be given effect; they simply disagree about which verdict is final and which should be ignored. We reject this premise.[3] Following federal authorities, we previously have held that "[a] verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered." *State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994); *accord State v. Webb*, 186 Ariz. 560, 563, 925 P.2d 701, 704 (App. 1996).

---

[3]We need not specifically address Hansen's claim that the verdict form finding him not guilty of simple assault constitutes an acquittal for purposes of the Double Jeopardy Clause. Hansen did not file a notice of appeal from the trial court's mistrial order, and the double jeopardy issue is not otherwise ripe for our review. *See State v. Rasch*, 188 Ariz. 309, 312-13, 935 P.2d 887, 890-91 (App. 1996) ("[A] double jeopardy issue is not 'ripe' until the defendant is prosecuted following a mistrial."), *quoting State v. Marquez*, 113 Ariz. 540, 541, 558 P.2d 692, 693 (1976).

**¶11** This statement is an oversimplification, however, insofar as it presumes the verdict is valid and has been accepted by the court. "There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967). "[A] verdict must be unqualified and unambiguous," and "[a] trial court may not accept a verdict if it is defective but must either direct the jury to retire for further deliberation or declare a mistrial." *United States v. Lee*, 532 F.2d 911, 913 (3d Cir. 1976). "The test for validity of the verdict is whether it 'was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.'" *United States v. Morris*, 612 F.2d 483, 490 (10th Cir. 1979), *quoting Cook*, 379 F.2d at 968; *see State v. Marin*, 107 Ariz. 580, 582, 490 P.2d 1170, 1172 (1971) (verdict valid when jury's intent "unmistakably expressed"). "'An attempt by a jury to return a verdict that is not accepted by the trial judge is not a verdict. A verdict is not binding until the court accepts it and the jury is discharged.'" *State v. Martinez*, 198 Ariz. 5, ¶ 11, 6 P.3d 310, 313 (App. 2000), *quoting State v. Peters*, 855 S.W.2d 345, 349-50 (Mo. 1993).

**¶12** Here, the trial court did not accept the ambiguous verdict but rather discharged the jury and declared a mistrial as permitted by our rules of procedure. Under Rule 23.4, Ariz. R. Crim. P., which is derived from Rule 31(d), Fed. R. Crim. P., either party or the court may poll the jury "[a]fter the verdict is returned and before the jury is discharged." The rule also allows the court to "direct [jurors] to retire for further deliberations or . . . discharge[]" them based on their responses. This process "compels the conclusion that a verdict is not final when announced." *United States v. Love*, 597 F.2d 81, 84 (6th Cir. 1979). And, although the language of the federal rule focuses on the need for jury unanimity, the rule has been interpreted to address "the equally important needs for clarity and certainty as to the meaning of the verdict being reported." *United States v. Rastelli*, 870 F.2d 822, 835 (2d Cir. 1989).

**¶13** Historically, Arizona has permitted trial courts to reinstruct jurors and direct them to continue deliberations when the jury returns a verdict "'so defective that the court cannot determine whether the jurors intended to acquit the defendant or to convict

him of an offense for which judgment could be entered.'" *State v. Barker*, 94 Ariz. 383, 387, 385 P.2d 516, 518 (1963), *quoting* Ariz. R. Crim. P. 298, 17 A.R.S. (1956). The 1973 changes to our rules of criminal procedure did nothing to diminish this authority. *See State v. Rich*, 184 Ariz. 179, 181, 907 P.2d 1382, 1384 (1995) (noting preference for reinstruction and further deliberations when jury returns guilty verdicts for charged and lesser included offense); *cf. State v. Davolt*, 207 Ariz. 191, ¶¶ 93-95, 84 P.3d 456, 478 (2004) (permitting court to allow jurors to make changes to verdict forms when foreperson's comments indicated jurors had been confused about how to complete forms and forms therefore did not reflect jury's verdict). Under the current Rule 23.2(a), "the jury shall in all cases render a verdict finding the defendant either guilty or not guilty." It cannot do both simultaneously. And a trial court should take "immediate corrective action where, as here, the jury's verdict is patently uncertain." *Rastelli*, 870 F.2d at 835.

**¶14** As noted, a trial court's choice of remedies when faced with such a verdict is either to reinstruct jurors and direct them to resume deliberations or declare a mistrial. *Lee*, 532 F.2d at 913; *see* Ariz. R. Crim. P. 23.4 (allowing discharge of jury if responses to poll "do not support the verdict"). A mistrial is a dramatic remedy reserved for situations in which the interests of justice would be thwarted unless a mistrial is granted. *State v. Miller*, 234 Ariz. 31, ¶ 25, 316 P.3d 1219, 1228 (2013). When a trial court is presented with a verdict finding a defendant guilty and not guilty of the same offense, or guilty of one crime and not guilty of its lesser included offense, the best practice for the court is to attempt to discern the jury's intention and remove the ambiguity from the verdict, if possible. *See United States v. McCaleb*, 552 F.3d 1053, 1058 (9th Cir. 2009) (recognizing "such a practice 'comports with common sense as well as efficiency and fairness'"), *quoting Larson v. Neimi,* 9 F.3d 1397, 1402 (9th Cir. 1993).[4] The opportunity for a "simple and efficient solution[] is permanently lost when jurors walk out the courtroom

---

[4]A trial court also might postpone the discharge of the jury to allow legal briefing or to allow a party to seek a stay from this court for a special action. *See* Ariz. R. P. Spec. Actions 5.

door." *United States v. Poole*, 545 F.3d 916, 919 (10th Cir. 2008). The decision to grant a mistrial, however, lies within the court's sound discretion. *State v. Adamson*, 136 Ariz. 250, 260, 665 P.2d 972, 982 (1983). And "the mere availability of another alternative does not render a mistrial order an abuse of discretion." *State v. Givens*, 161 Ariz. 278, 281, 778 P.2d 643, 646 (App. 1989).

**¶15** Although we conclude the trial court partially erred, we cannot find the court's declaration of a mistrial constitutes a reversible error. A discretionary determination predicated on an error of law constitutes abuse of discretion. *See Jimenez v. Chavez*, 234 Ariz. 448, ¶ 15, 323 P.3d 731, 734 (App. 2014). The state is correct that the trial court abused its discretion here insofar as it based its order on the mistaken impression that a mistrial was "required by law." But we have been presented with no authority establishing the existence of an adequate remedy at this juncture. As discussed above, the verdict here was ambiguous, the effect of the mistrial was to nullify the proceeding without a verdict, *see State ex rel. Sullivan v. Patterson*, 64 Ariz. 40, 45, 165 P.2d 309, 312 (1946), and the only relief now available, either from this court or the lower court, would appear to be the grant of a new trial.

**¶16** The state urges us to consider the record as a whole and find that the verdict of guilt, coupled with the dangerousness determination, represents the jury's true intention to convict Hansen as charged. Although the state makes a non-trivial argument about the jury's likely intentions, we cannot validate and accept the verdict in this manner for two principal reasons.

**¶17** First, the trial court did not poll individual jurors to determine whether the not guilty verdict also represented their true verdict. Accordingly, while the existing record certainly suggests the foreperson viewed the not guilty verdict as an unintended mistake, we decline to speculate on this limited record about what the remaining seven members of the jury intended by their verdicts.[5]

---

[5]While Hansen asserts that the not guilty verdict should be given effect because it was announced in court, we note that not every declaration by a jury in favor of a defendant constitutes a final verdict. *See, e.g.*, *Rastelli*, 870 F.2d at 834 (acquittals announced,

*Cf. Rich*, 184 Ariz. at 180, 181, 907 P.2d at 1383, 1384 (noting jury not polled on verdict form for lesser included offense, and declining to speculate about "what the jury would have done" with further instruction and deliberations). And, while we must be mindful that Arizona courts will give effect to inconsistent verdicts, the defendant also enjoys a constitutional right to a valid, unanimous verdict. *See Morris*, 612 F.2d at 490 (recognizing need for "safeguard[s] . . . to protect the constitutional right of [defendants] to valid, unanimous verdicts").

**¶18**　　　Second, any judicial interpretation of the verdict after the discharge of the jury deprives Hansen of the opportunity to poll the jurors and confirm such an interpretation. In addition, it might undermine the voluntary choice Hansen made arguing for a mistrial—a choice that waived any claim of double jeopardy protections arising from the verdict form in his favor. *See United States v. Scott*, 437 U.S. 82, 99 (1978) ("[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice."). In sum, given the limited record, the uncertainty about the jury's intended meaning, and the potential constitutional problems involved in imposing a verdict at this stage by judicial construction, we find no basis to reverse the trial court's ruling.

**¶19**　　　The state further asserts that the ambiguous verdicts here were simply "inconsistent verdicts" that "the law clearly allows." Indeed, in Arizona we do not disturb inconsistent verdicts. *Gusler v. Wilkinson*, 199 Ariz. 391, ¶ 25, 18 P.3d 702, 707 (2001); *State v. Zakhar*, 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969); *e.g.*, *Webb*, 186 Ariz. at 561, 925 P.2d at 702 (defendant acquitted of felony DUI but convicted of DUI and driving without license); *State v. Parsons*, 171

---

foreman indicated confusion, deliberations resumed, and verdicts of guilt returned on some counts previously acquitted); *United States v. Mears*, 614 F.2d 1175, 1179 (8th Cir. 1980) (jury permitted to correct not guilty verdict form after announcement in court when foreman immediately indicated form was incorrectly signed; verdict changed to guilty after further deliberation); *Love*, 597 F.2d at 83-84 (acquittal announced, but non-unanimous poll led to mistrial).

Ariz. 15, 15-16, 827 P.2d 476, 476-77 (App. 1992) (defendant convicted of aggravated assault with deadly weapon, but crime found not to be dangerous-nature offense); *State v. Estrada*, 27 Ariz. App. 38, 39-40, 550 P.2d 1080, 1081-82 (1976) (defendant guilty of conspiracy but acquitted of underlying drug offenses).

¶20 The rationale for this approach is that the inconsistency might not represent an error detrimental to the defendant but instead could be a favorable error or the result of jury nullification, compromise, or lenity. *See United States v. Moran-Toala*, 726 F.3d 334, 342 (7th Cir. 2013); *United States v. Siegelman*, 640 F.3d 1159, 1185 n.36 (11th Cir. 2011); *Zakhar*, 105 Ariz. at 32-33, 459 P.2d at 84-85. It is unclear "whose ox has been gored" by the inconsistency, *United States v. Powell*, 469 U.S. 57, 65 (1984), as the defendant might have received a benefit to which he or she was not entitled. *Id.* at 69. We do not guess about what the jury "'really meant'" by its verdicts, *id.* at 68, nor do we generally inquire into the jury's deliberative process. *Id.* at 66; *see* Ariz. R. Crim. P. 24.1(d). Hence, we will not subject an inconsistent verdict to any special judicial review. *Powell*, 469 U.S. at 68-69.

¶21 However, this rationale does not apply to contradictory verdicts returned on a single count. These verdicts are not simply legally inconsistent or "'rationally incompatible,'" *United States v. Suarez*, 682 F.3d 1214, 1218 (9th Cir. 2012), *quoting United States v. Guzman*, 849 F.2d 447, 448 (9th Cir. 1988), as the state suggests. Rather, they are impossible in the sense that they cannot be given simultaneous effect. Nullification, compromise, and lenity cannot explain the result; there is no question but that the jury erred and failed to express a meaningful intention. Moreover, a court cannot simply let this type of ambiguous verdict stand, as it may with other inconsistencies, because the verdicts of guilt and acquittal together prevent either one from functioning. Neither party receives a benefit from such an unintelligible determination, and resolving the ambiguity by any other means than further deliberations would require a court to speculate about the reason for the inconsistency or inquire into the jury's deliberations. This, as *Powell* explains, we do not do. 469 U.S. at 66.

¶22    We publish this opinion, as the state requests, to clarify this important distinction and give guidance to trial courts and parties who face issues of inconsistency or ambiguity. Ordinarily, an inconsistency involving criminal verdicts does not render them invalid or permit a trial court to reject them; in other words, an inconsistency does not authorize a court to reinstruct jurors and resume deliberations. *See Webb*, 186 Ariz. at 563, 925 P.2d at 704; *Malott v. Miller*, 162 Ariz. 239, 242, 782 P.2d 715, 718 (App. 1989). A court must simply accept the verdicts without probing into the jurors' thought processes or demanding adherence to its instructions.

¶23    Remedial efforts are appropriate, however, when a jury returns (1) guilty verdicts on both a greater and lesser included offense or (2) an ambiguous verdict finding the defendant guilty and not guilty of the same offense, or guilty of the greater offense but not guilty of the lesser included offense.[6] In the latter situation, a court cannot give legal effect to the verdicts without resolving the question of the jury's intended meaning. *See Brown v. Ohio,* 432 U.S. 161, 167-68 (1977) (holding greater and lesser included offenses are same for jeopardy purposes). In the former, our supreme court has required such action in *Rich*, 184 Ariz. at 181, 907 P.2d at 1384, and we are not at liberty to ignore this precedent, *see State v. Miranda*, 198 Ariz. 426, ¶ 13, 10 P.3d 1213, 1216 (App. 2000), *aff'd,* 200 Ariz. 67, 22 P.3d 506 (2001).

¶24    Under controlling Arizona case law, the trial court here would have erred by simply ignoring the not guilty verdict on the

---

[6]A third possible situation, which was contemplated in *Powell*, 469 U.S. at 69 n.8, occurs when a jury returns verdicts of guilt on separate offenses but the "verdict on one count logically excludes a finding of guilt on the other." Arizona has yet to address such a case of so-called "mutually exclusive verdicts," *United States v. Maury*, 695 F.3d 227, 263 (3d Cir. 2012), and we do not purport to resolve that question. We note, however, that the problem of ambiguous verdicts, as we use the term, is akin to the problem of mutually exclusive verdicts: in both scenarios, the verdicts negate one another and the defendant receives no benefit.

lesser included offense and accepting the defective verdict announced in court. *See Rich*, 184 Ariz. at 181 & n.1, 907 P.2d at 1384 & n.1. That the court declared a mistrial rather than directing jurors to resume deliberations and thereby resolve the ambiguity in the verdict does not constitute a reversible error under the circumstances of this case.

¶25 We understand the perspective that the jury's intentions to convict were "abundantly clear," as our dissenting colleague maintains. And, on the dry record before us, we do not dispute that our colleague's interpretation of the jury's intent is a plausible one. But we do not write on a clean slate. Implicit in the trial court's ruling was a conclusion that the jury's intent had not been clarified either by the dangerousness finding or the foreperson's incomplete statement thereafter. And, although the court presided over the proceeding and had the opportunity to assess the demeanor of both the foreperson and the jury, it declined to credit the foreperson's suggestion that the not guilty verdict was a mere clerical error. Moreover, given the availability of the curative measures not taken, which could have readily clarified the jurors' intent, we are reluctant now to place undue confidence in the limited evidence of such intent that still survives. Although the dissent maintains the poll of the jury demonstrates the jury's intent to convict, the jury's return of a not guilty verdict on the lesser offense is substantial evidence of a conflicting intent, and the trial court was entitled to consider it as such. Here, the jury poll did nothing to eliminate the ambiguity when that ambiguity was clearly the product of the jury's misunderstanding of the law. We decline to speculate on the precise nature of that misunderstanding and do not consider the incomplete statement of the foreperson dispositive evidence of the mindset of the remaining seven jurors.

¶26 Procedurally, Hansen was entitled to a certain verdict confirmed by all jurors, and we cannot agree with the dissent that he somehow waived his right to poll the jury anew or otherwise confirm its intent when, after the trial court had refused to accept the verdicts based on their ambiguity, he requested a mistrial. A defendant does not waive an alternative remedy when he asks for, and is granted, relief that the law entitles him to have. In short,

Hansen requested a mistrial rather than another poll, and it would be fundamentally unfair to now provide him neither.

**Disposition**

¶27        Accordingly, we accept special action jurisdiction and affirm the trial court's order.

E S P I N O S A, Judge, dissenting:

¶28        I must respectfully dissent because I cannot agree with my colleagues' foundational premise, which redefines the attributes of a final verdict to conclude that the jury's verdict here, on the only count the defendant was charged with, was ambiguous.  On the record before this court, the jury's intent to convict Hansen of aggravated assault was made abundantly clear, and the trial court reversibly erred in disregarding the jury's decision on the basis of a mere clerical mix-up.

¶29        As my colleagues acknowledge, this court has observed that "[a] verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered."  *State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994); *accord State v. Webb*, 186 Ariz. 560, 563, 925 P.2d 701, 704 (App. 1996).  "[M]ere irregularity in a verdict of conviction is immaterial if the intent to convict the accused of the crime charged is unmistakably expressed."  *State v. Marin*, 107 Ariz. 580, 582, 490 P.2d 1170, 1172 (1971).

¶30        Here, not only did the jurors expressly confirm their intentions when individually polled after the verdict had been rendered and announced, but any possible ambiguity was eliminated when the jury went on to find the offense a dangerous one, based on Hansen's use of a weapon, and then verbally confirmed its decision in open court when queried by the judge. That a second verdict form relating to the lesser-included offense of simple assault was marked "not guilty," while inconsistent with the court's instructions, was readily explained by the foreperson as simple confusion on her part in dealing with "the two sheets."  My

colleagues greatly overstate this irregularity by regarding it as "substantial evidence of a conflicting intent" on the aggravated assault charge. *See Marin; see also People v. Camacho*, 90 Cal. Rptr. 3d 559, 562 (Cal. Dist. Ct. App. 2009) (error in recording judgment as opposed to rendering judgment immaterial if, viewing record as a whole, jury's intent to convict unmistakable).

¶31 My colleagues also voice concern that upholding the jury's expressly confirmed verdict would deprive Hansen of the opportunity to have polled the jurors about the aberrational, if semantically logical, verdict sheet marked "not guilty" of simple assault. But Hansen was free to request such polling, just as he did without hesitation for the aggravated assault verdict. Doing so would certainly have further clarified the foreperson's mistake, a mere clerical matter not involving the jury's deliberative process. Contrary to my colleagues' assessment, the trial court did not decline to credit the foreperson's explanation, but rather cut her off and did not consider it, under the erroneous belief that it went to the jury's thought process. *See Plummer v. Springfield Terminal Ry. Co.*, 5 F.3d 1, 3 (1st Cir. 1993) (well established that juror testimony regarding alleged error, such as announcing a verdict different than that intended, does not invoke deliberative processes). Hansen, however, strategically chose not to inquire further or poll the jury on the lesser-included offense. Accordingly, no unfairness arises from his concededly "voluntary choice," which waived any further rights he had in that regard. *See State v. Engram*, 171 Ariz. 363, 365, 366, 831 P.2d 362, 364, 365 (App. 1991) (following guilty verdicts on both charged and lesser-included offense, had defendant "ask[ed] that the jury be questioned further on the subject" "the trial judge might very well have explained the inconsistency to the jury and determined its true intent on the record").

¶32 It requires no speculation, but only common sense to conclude the jury's verdict finding Hansen guilty of aggravated assault with a dangerous weapon "'was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.'" *United States v. Morris*, 612 F.2d 483, 490 (10th Cir. 1979), *quoting Cook v. United States*, 379 F.2d 966, 968 (5th Cir. 1967). I would accordingly reverse

the trial court's mistrial ruling, reinstate the jury's verdict, and remand the case for sentencing.